IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01756-DME-MJW

MARCUS L. FREEMAN,

Plaintiff,

v.

WOOLSTON, Vocational Instructor, and
LIKEN, Education Department,

Defendants.

---

**RECOMMENDATION ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 129)**
**and**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 151)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order of Reference to United States Magistrate issued by U. S. Circuit Court Judge David M. Ebel on September 9, 2011 (Docket No. 13).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, Marcus Leland Freeman, alleges the following two claims in his Amended Prisoner Complaint (Docket No. 6).

Claim One. Plaintiff was assaulted by defendants Woolston and Liken[1] in USP Florence-High on July 6, 2011, in violation of the Eighth Amendment, causing injuries.

---

[1]Defendants note in their motion for summary judgment that the correct name for defendant "Liken" is Likens. Docket No. 129 at 1 n.1.

On that morning, officers were conducting cell searches. Two officers came to the plaintiff's cell and gave plaintiff and his cell mate a direct order to submit to hand restraints for a search of their cell. Plaintiff requested that two hand restraints be placed on him, and the officer stated he would comply with that request. Once placed in hand restraints, plaintiff overheard defendant Woolston say to the officer who had restrained plaintiff that plaintiff was fat and needed to lose weight. Such a statement is a violation of Program Statement 3420.09, which is inappropriate conduct of an officer. Plaintiff asked Woolston what he said and told Woolston that he was going to file a complaint against him for the statements made.

Once plaintiff's cellmate was placed in hand restraints, the cell door was opened. Woolston grabbed plaintiff's arm with force, stated to the plaintiff, "your mouth is going to get you in trouble," and used force by applying pressure to his grip to cause plaintiff pain. Plaintiff asked to be escorted by another officer. Woolston then pushed plaintiff against the door frame outside the cell door, causing plaintiff to strike his face on the door's edge. He then pushed plaintiff and threw him into the cell locker by the door and to the floor with force on both knees. Liken helped Woolston drag plaintiff further into the cell out of the view of the unit camera, and Woolson and Liken continued to assault the plaintiff by repeatedly striking him in the "head area of the neck" and lifted both arms up. Plaintiff pleaded with them to stop, but they did not stop until other officers grabbed them. Plaintiff suffered cuts on both knees as a result of being dragged on the floor to the bottom bunk area of the cell. Woolston's actions were done to hurt plaintiff intentionally and cause injuries and were acts of deliberate indifference. Plaintiff was not a threat to the officers' safety because he was in hand restraints before the cell door

was opened.

Plaintiff waited over one hour to see medical personnel. Plaintiff reported pain in both arms, his head and neck area, and both knees. Medical staff failed to give plaintiff a full review to the cuts in his wrist area and the bruising on the ride side of his shoulder, and his face, head, and neck. False reports were filed to cover up the abuse.

Plaintiff seeks $10,000 in punitive damages from each defendant for the pain in his shoulder area and upper back area, as well as court fees and money spent for copies and stamps. Plaintiff further requests an investigation so that charges can be filed against both defendants.

Claim Two. Plaintiff was assaulted again by Woolston on December 14, 2011, in violation of plaintiff's Eighth Amendment rights and in retaliation for the complaints filed against him with the Federal Bureau of Prisons ("BOP"). Prior to this incident, plaintiff had reported repeated harassment from Woolston in retaliation for plaintiff's complaint to the BOP. Woolston has repeatedly attempted to place plaintiff in an area by himself so that false reports could be filed. Woolston has made attempts to argue with plaintiff without cause by stating that plaintiff's complaint is not taken seriously and that he was going to hurt plaintiff again.

Plaintiff was in the Education Department and requested to see a lieutenant because Woolston was hindering his ability to petition the courts under his First Amendment right by denying him legal material to type court documents. Woolston kept asking plaintiff to come into his office, and plaintiff "told this officer I was no fool and mindful of his plans, and to come out of his officer [sic] in front of all the other inmates and camera so that everyone could see him." (Docket No. 6 at 11). When plaintiff

would not go into the office, Woolston said plaintiff threatened him. Plaintiff moved away from Woolston and got on his knees in the middle of the floor. Woolston attacked plaintiff while on his knees, causing the injuries to his knee area by trying to force plaintiff to the ground on his face. Plaintiff got on his knees because Woolson assaulted him previously (see Claim One). Woolston had stated several times he was going to get the plaintiff if he did not drop the complaint filed against him. Plaintiff had told Woolston he was going to pursue his complaint all the way to the U.S. District Court and request charges against Woolston and Liken for what they did.

Plaintiff seeks a transfer to another facility, that he be separated from Woolston, that charges be brought against Woolston, and that he be granted punitive damages of $10,000 for the injuries and pain.

Plaintiff also brought a third claim, but it was merely a claim for discovery concerning Claims One and Two.

**PENDING MOTIONS**

Now before the court for a report and recommendation are cross motions for summary judgment (Docket Nos. 129 and 151). Responses (Docket Nos. 162, 163, 167) and replies (Docket Nos. 175 and 179) have been filed. The court has carefully reviewed these motion papers, the videos of the incidents and subsequent debriefings, the court file, and applicable Federal Rules of Federal Procedure and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

Rule 56(a) provides that summary judgment shall be granted “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendants Woolston, a vocational instructor for the BOP, and Likens, an

Education Specialist for the BOP, assert they are entitled to summary judgment because under the record evidence, there is no genuine dispute that their actions in restraining a threatening, assaultive, and disruptive high-security inmate did not constitute excessive force in violation of the Eighth Amendment. With regard to the July 6 incident, they assert that a mass cell search was taking place in the unit of the high-security prison where plaintiff lived. Defendants were assisting in the shakedown even though their typical duties involved teaching courses to inmates. Woolston was attempting to escort plaintiff away from his cell when plaintiff resisted. Instead of obeying orders, plaintiff became increasingly disruptive and assaultive. With the assistance of Likens, Woolston was able to take plaintiff to the ground and restrain him. With regard to the December 14 incident, Woolston was working alone in the Education Department with at least ten other inmates present. Plaintiff became verbally and physically threatening to Woolston, including punching the glass to the office where Woolston worked and challenging Woolston in front of the other inmates. After calling for staff assistance, Woolston used the minimal force necessary to take plaintiff to the ground and restrain him.

Plaintiff also moves for summary judgment, but he claims "[t]here are genuine disputes as to material facts and the plaintiff can meet his burden of proof to establish the elements of his Eighth Amendment Bivens claims." (Docket No. 151 at 1). He asserts that the defendants used excessive force that was not applied in a good-faith effort to maintain or restore discipline but rather was used in a malicious and sadistic manner to cause harm. With regard to the July 6 incident, plaintiff asserts that camera footage will show no struggle occurred between him and Woolston before plaintiff was

pushed up against the wall outside the cell. Plaintiff alleges he did not assault, attempt to assault, push or pull away, or use his elbow to strike Woolston as alleged, and he did not become combative. Plaintiff asserts that his injuries were more than de minimis.

With regard to the December 14 incident, plaintiff asserts that Woolston kept asking him to come back in the office, but plaintiff would not do so because he felt something was not right. Plaintiff never called Woolston a "redneck hick" or redneck cracker," nor did he use the "n-word," but he did call him a "redneck." Camera footage will show the plaintiff has legal material in his hands, so he was unable to hit the glass as described by Woolston. It will also show Woolston yelling at plaintiff as plaintiff calmly moves farther away as Woolston comes out of his office, moves away each time Woolston approaches him, and goes to the exit door and sits in a chair by the door. At no time did plaintiff approach Woolston in a threatening matter, nor did plaintiff request that Woolston come out of his office to cause him imminent harm. When Woolston approached the exit door, plaintiff moved his chair farther away. Inmate witnesses state plaintiff did not threaten Woolston. Camera footage will show Woolston was engaging in disruptive conduct. He should have let responding staff into the education department.

The Eighth Amendment, applicable to the states via the Fourteenth Amendment, proscribes the infliction of cruel and unusual punishments against persons convicted of crimes. Clemmons v. Bohannon, 956 F.2d 1523, 1525 (10th Cir. 1992). "[T]he use of excessive force against a prisoner can violate the Eighth Amendment . . . ." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Ordinarily, an excessive force claim involves two prongs: (1) an objective

prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." Id. (internal quotations and brackets omitted).

Excluded from the Eighth Amendment's reach are "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations omitted). Therefore, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 10. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Gee v. Pacheco, 627 F.3d 1178, 1193 (10th Cir. 2010) (quotations omitted). "An action by a prison guard may be malevolent yet not amount to cruel and unusual punishment." Marshall v. Milyard, 415 Fed. Appx. 850, 852 (10th Cir. Jan. 31, 2011) (citing Hudson, 503 U.S. at 9). "[E]ven if a use of force is deemed unnecessary after the fact, if it was both de minimus and 'not of a sort repugnant to the conscious of mankind,' it will not sustain an excessive-force claim." Id. at 853 (quoting Hudson, 503 U.S. at 10).

Here, this court need not decide the issue of whether plaintiff's allegations are sufficient to satisfy the subjective prong of an excessive force claim because he has failed to show wrongdoing that was "objectively harmful enough to establish a constitutional violation." Cochran, 339 F.3d at 1212. This court finds that plaintiff's claim that Woolston and Likens used excessive force when they came to escort him on July 6 by Woolston applying pressure to his grip to cause plaintiff pain, putting or pushing him against or into the doorframe, taking him to the floor of his cell, etc., fails to

state a claim of constitutional magnitude because the force used against plaintiff was both de minimus and not of a nature that is repugnant to mankind. See Marshall v. Milyard, 415 Fed. Appx. at 852-53 (officer's grabbing of inmate's arm and digging his fingernails into it did not state a claim) (citing Norton v. City of Marietta, 432 F.3d 1145, 1156 (10th Cir. 2005) (prison guards' grabbing inmate around his neck and twisting it was not "objectively harmful enough to establish a constitutional violation"); De Walt v. Carter, 224 F.3d 607, 610-11 (7th Cir. 2000) (Prisoner alleged an officer shoved him into a doorframe after the prisoner called him unprofessional, causing bruising on the prisoner's back. The force used was found to be de minimus and insufficient to support an Eighth Amendment claim.); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions"); Lunsford v. Bennett, 17 F.3d 1574, 1578, 1582 (7th Cir. 1994) (hitting prisoner in the head with a bucket, causing daily headaches, was minor use of force insufficient to establish constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); Olson v. Coleman, 804 F. Supp. 148, 149-50 (D. Kan. 1992) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimus use of force not repugnant to conscience of mankind)); Marquez v. Watkins, 2006 WL 122473 (10th Cir. Jan. 18, 2006) (Prisoner's allegations of being pushed and shoved on the way to a unit and dragged to the floor in a holding cell and repeatedly punched in the back of the head did not withstand summary judgment. No reasonable jury could return a verdict in his favor.). The same holds true for Woolston's act of taking plaintiff

down onto the floor on December 14.

Furthermore, with respect to the December incident, the video of the take-down, which plaintiff asked this court to view, shows that the use of force was justified to restore discipline and security. Plaintiff admittedly was “very upset” (see Docket No. 129-4 at 8, line 2) that there were no typing wheels available for his use on a typewriter when he arrived late to the education department; all of them had already been checked out by other inmates, and plaintiff did not have one of his own that he had purchased. Plaintiff admittedly called Woolston a redneck (see Docket No. 129-4 at 9, lines 2-3), refused to go into Woolston’s office as requested, and told Woolston to come out. Plaintiff claims he merely tapped on Woolston’s glass window. Woolston perceived it as banging on the window. Their different characterizations of how hard plaintiff touched the window do not create a genuine issue of material fact. It is undisputed that Woolston was the sole officer in the locked education department with at least ten other inmates. Plaintiff (who is a very large man–approximately six feet tall and weighing between 287 and 300 pounds - see Docket No. 129-7 at 4, ¶ 8 - and larger than Woolston) was very upset and admittedly did not comply with Woolston’s repeated direct orders to get on the ground face down. (See Docket No. 129-4 at 10). The video shows that once other officers arrived at the locked door in response to Woolston’s request for assistance, rather than complying with Woolston’s orders to get on the ground, plaintiff instead went and sat in a chair near the door. Moreover, the video further shows that when Woolston went to open or unlock that door, which would have required Woolston to turn his back to plaintiff, plaintiff moved his chair back, and Woolston then stepped back toward plaintiff, at which time plaintiff very quickly got up

out of the chair and began rapidly moving in the other direction, resulting in Woolston chasing after plaintiff and very quickly taking him to the ground, which is a standard correctional maneuver. Woolston had reason to interpret plaintiff's behavior in the education department that day as a threat, and the use of force was justified to restore security.

"Moreover, although [plaintiff] was not required to allege a significant injury in order to state an Eighth Amendment excessive force claim, the extent of his injury 'may . . . provide some indication of the amount of force applied.'" Marshal v. Milyard, 415 Fed. Appx. at 853 (quoting Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010)). After the July incident, plaintiff had a medical examination during which he reported pain in both arms, neck, head, and left knee. The exam, however, revealed one minor injury, an "[a]brasion to left knee, 3x3 inches. No bleeding noted." (Docket No. 129-5 at 18). Because plaintiff was in handcuffs, the nurse was unable to examine plaintiff's shoulders or elbows, but she found that "all other joint movements [had] full range of motion. Ambulates with normal gait." (Docket No. 129-5 at 19). Plaintiff was treated with a Band Aid and was instructed to follow-up at sick call as needed. (Docket No. 129-5 at 19). Significantly, there is nothing in his subsequent medical records that reflects any further medical complaint relating to that incident. (See Docket No. 129-7 at 7, ¶ 18). With respect to the December incident, plaintiff himself states that he only "had a scratch on one knee and it was partially bleeding on the other knee – or right knee." (Docket No. 129-4 at 11, lines 6-9; see Docket No. 129-6 at 24 ("Symptoms (as reported by inmate): no injuries. . . . Objective: (Observations or Findings from Examination) approx 1" scratch to lateral aspect of [right] knee. . . . No Medical

Attention.")). Thus, the evidence of record showing very minimal injuries lends further support to my finding that only de minimus force was used.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion for Summary Judgment (Docket No. 129) be **GRANTED**. It is further

**RECOMMENDED** that the Plaintiff's Motion for Summary Judgment (Docket No. 151) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: December 14, 2012
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge