**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01756-DME-MJW

MARCUS LELAND FREEMAN,

      Plaintiff,

v.

WOOLSTON, Vocational Instructor,
LIKEN, Educational Department,

      Defendants.

---

**ORDER ADOPTING IN PART, REJECTING IN PART THE MAGISTRATE JUDGE'S RECOMMENDATION**

---

This matter comes before the Court on the parties' objections (Docs. 190, 192) to the magistrate judge's report and recommendation, dated December 14, 2012, which addresses the parties' cross-motions for summary judgment (Doc. 186). After considering the parties' objections, the Court ADOPTS the magistrate judge's recommendation IN PART, and REJECTS it IN PART. The Court, therefore, DENIES Plaintiff Marcus Freeman's motion for summary judgment (Doc. 151), and GRANTS in part and DENIES in part Defendants' motion for summary judgment (Doc. 129).

## I. Preliminary discovery matter

In his objections, Freeman raises a preliminary matter. He contends that the magistrate judge erred in not giving him more time to locate witnesses, after the discovery deadline passed. Since Freeman raised this issue in his objections, however, the Court has affirmed the magistrate judge's decision denying Freeman more time for

discovery. See Garcia v. U.S. Air Force, 533 F.3d 1170, 1179-80 (10th Cir. 2008) (holding district court did not abuse its discretion in denying Fed. R. Civ. P. 56(f) (now Rule 56(d)) motion where movant already had six months to conduct the requested discovery).

## II. Standard of review

This court must review de novo any part of the magistrate judge's recommendation to which there has been a timely objection.[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); see also Garrett v. BNC Mort., Inc., --- F. Supp. 2d ---, 2013 WL 878749, at *1 (D. Colo. Mar. 7, 2013).

As previously mentioned, the magistrate judge's recommendation addresses the parties' cross-motions for summary judgment. The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the moving party is entitled to judgment as a matter of law based on the record, we review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmovant." Constitution Party of Kan. v. Kobach, 695 F.3d 1140, 1144 (10th Cir. 2012) (addressing cross-motions for summary judgment) (internal quotation marks omitted). Because Freeman is proceeding pro se, the Court liberally construes his pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

---

[1] The magistrate judge recommends denying Freeman's motion for summary judgment, and Freeman does not expressly object to that recommendation. Further, it is appropriate to deny Freeman's summary judgment motion because, in it, Freeman argued that there are disputed issues of fact that require a trial. The Court, therefore, ADOPTS the magistrate judge's recommendation in this regard and DENIES Freeman's summary judgment motion.

### III.  Freeman's claims

The magistrate judge thoroughly set forth Freeman's allegations.[2]  Briefly summarized, Freeman, a federal prisoner, asserts Bivens[3] claims alleging that Bureau of Prisons ("BOP") guards, Defendants Phil Woolston and Robert Liken,[4] violated the Eighth Amendment by assaulting Freeman on two separate occasions.  To succeed on these claims, Freeman "must show (1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind."  Norton v. City of Marietta, 432 F.3d 1145, 1154 (10th Cir. 2005) (per curiam); see also Hudson v. McMillian, 503 U.S. 1, 8 (1992).

**A.  First incident - July 6, 2010**

Regarding the first incident, the evidence, viewed in the light most favorable to Freeman, establishes the following:  As Woolston was escorting the handcuffed Freeman out of his cell, Woolston, without provocation, grabbed Freeman's arm forcefully, shoved Woolston so that his face hit the cell door frame, shoved him again so that his shoulder hit a locker in the cell, and threw him to the ground.  Liken then helped Woolston drag Freeman, on his knees, back into the cell, where the two guards twisted

---

[2] The Court accepts Freeman's assertion, in his objections, that he alleged that prison medical personnel waited over an hour to examine him after the July 6, 2010 incident. Despite this allegation, however, Freeman did not assert a separate cause of action alleging the unconstitutional deprivation of medical treatment.

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[4] Although Freeman identified this Defendant as Liken, Defendants assert that his name is, instead, Likens.  Because Defendants have not moved to correct the caption, however, the Court will continue to refer to this Defendant as Liken.  See Murphy v. Gardner, 413 F. Supp. 2d 1156, 1160 n.2 (D. Colo. 2006).

Freeman's arms upward and hit him more than ten times about the head and neck with closed fists. As a result of this assault, Freeman alleged he suffered injuries to both knees and pain in his shoulder, neck and head. Prison officials treated Freeman for a skinned knee.[5]

### 1. Whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation

The magistrate judge recommends granting Defendants summary judgment as to this incident because Freeman failed to establish that Defendants' alleged wrongdoing was "objectively harmful enough to establish a constitutional violation." (Doc. 186 at 9 (internal quotation marks omitted).) More specifically, the magistrate judge determined that Freeman had "fail[ed] to state a claim of constitutional magnitude because the force used against [Freeman] was both de minimus and not of a nature that is repugnant to mankind." (Id. at 9-10.) Freeman objects to the magistrate judge's recommendation.

Freeman is correct that, to prevail on his Eighth Amendment claim, he does not have to prove that he suffered serious injuries as a result of the alleged assault. See Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1176 (2010) (citing Hudson, 503 U.S. at 4). The extent of his injuries is, however, one factor that may bear on whether the force applied was de minimis. See id. Nonetheless, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Id. at 1178.

---

[5] Defendants dispute Freeman's version of this incident, asserting instead that Freeman struggled with Woolston, as Woolston tried to escort Freeman from his cell, requiring Defendants to force Freeman against the cell door frame and then take him to the ground in an attempt to regain control over him. At the summary-judgment stage of this litigation, however, the Court must view the evidence in the light most favorable to Freeman.

In this case, Freeman's evidence (his own statements based on his personal knowledge and made under oath or penalty of perjury, see Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991)), indicates that Defendants used more than de minimis force against him.  While Defendants cite cases where courts have determined, as a matter of law, that a push or a shove resulting in only minor injury was use of de minimis force, here Freeman's evidence indicates, to the contrary, that Defendants pushed and shoved the handcuffed Freeman several times into solid objects, then took him to the ground and hit him numerous times about the head and back with closed fists.  Cf. United States v. LaVallee, 439 F.3d 670, 686-87 (10th Cir. 2006) (noting, in criminal prosecution of prison guards for beating inmates, that parties did not dispute at trial that hitting a restrained and compliant inmate "in the back numerous times," where "the sound of the blows could be heard in another room fifteen to twenty feet away," was more than de minimis force).  Freeman's evidence, thus, creates a genuinely disputed issue of material fact, sufficient to survive summary judgment, as to whether Defendants applied more than de minimis force against Freeman.  Cf. Ali v. Dinwiddie, 437 F. App'x 695, 697-98, 700 (10th Cir. 2011) (unpublished) (concluding that there was a material issue of fact as to whether prison guards used more than de minimis force where inmate alleged that guards punched and kicked him after he was handcuffed and not resisting, where inmate suffered abrasions to his wrist, contusions to his head, and bruising and pain in his shoulder which restricted inmate's abduction of his shoulder even one and one-half years later).  The Court's review of the video evidence does not resolve this factual dispute.

### 2. Whether Defendants acted with a sufficiently culpable state of mind

Freeman must also establish that Defendants "acted with a sufficiently culpable state of mind." Norton, 432 F.3d at 1154. "Th[is] subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks omitted); see also Hudson, 503 U.S. at 7. Freeman's evidence, accepted as true, indicates that Defendants assaulted him without any provocation. Under these circumstances, that is sufficient for Freeman's claim to survive summary judgment.

### 3. Qualified immunity

Although the magistrate judge did not address the issue, Defendants also moved for summary judgment on the basis of qualified immunity. And Defendants objected to the magistrate judge's recommendation because it did not grant them qualified immunity.

In light of Defendants' assertion of qualified immunity, Freeman had the burden of showing both (1) that Defendants violated Freeman's constitutional rights and (2) that those rights were clearly established at the time of the incident, on July 6, 2010. See Becker v. Bateman, --- F.3d ---, 2013 WL 697910, at *2 (10th Cir. Feb. 27, 2013). As just discussed, Freeman sufficiently established a claim that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they purportedly assaulted him without provocation. See Smith, 339 F.3d at 1215. And an inmate's right to be free from cruel and unusual punishment, in the form of such a

malicious and sadistic application of excessive force against him by prison guards, was clearly established prior to the date of this incident.  See Hudson, 503 U.S. 1 (decided in 1992); see also Allen v. Zavaras, 474 F. App'x 741, 744 (10th Cir.) (unpublished) (noting that, "[t]o determine whether the correctional officers' use of force violated [an inmate's] clearly established rights under the Eighth Amendment, we ask 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'" (quoting Hudson, 503 U.S. at 6-7)), cert. denied, 133 S. Ct. 656 (2012).

### 4. Conclusion as to Freeman's claim based on the July 6, 2010 incident

For the foregoing reasons, the Court REJECTS the magistrate judge's recommendation as to this claim in part and DENIES Defendants summary judgment. A factfinder will, thus, have to decide whether Freeman's version of events or Defendants' version is more credible.  See Norton, 432 F.3d at 1152-54; see also Ali, 437 F. App'x 695.  The Court notes, without deciding at this juncture, that even if Freeman succeeds at trial on this claim, the apparently modest nature of his alleged injuries may limit the damages he may recover.  See Wilkins, 130 S. Ct. at 1180.

### B. December 14, 2010 incident

Regarding the December 14, 2010 incident, the evidence, viewed in the light most favorable to Freeman, establishes the following:  Woolston was supervising at least ten inmates, including Freeman, in the prison's education department.  Freeman became upset when he did not receive "material to type court documents" and he "tapped" the glass window in Woolston's office. (Docs. 6 at 11; 129-4 at 8.)  Woolston

asked Freeman to come into the office, but Freeman refused. Woolston then ordered Freeman to get down on the ground, but Freeman refused. Woolston, therefore, took Freeman to the ground and restrained him. As a result, Freeman suffered a one-inch scratch on his right knee. Freeman asserts that Woolston unjustifiably attacked him in retaliation for Freeman's filing a complaint against Woolston for the July 6, 2010 incident.

The magistrate judge, focusing on the question of whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, recommends granting Defendant Woolston summary judgment on this claim because Woolston's "use of force was justified to restore discipline and security." (Doc. 186 at 10-11.) The Court agrees, in light of the video evidence and the fact that Freeman himself admits being angry, "tapping" Woolston's office window and refusing to obey Woolston's directions to come into his office and to get down on the ground. See Green v. Denning, 465 F. App'x 804, 806-07 (10th Cir. 2012) (unpublished) (affirming summary judgment for prison guard where undisputed facts indicated "that the decision to bring [inmate] to the ground was appropriate" because the inmate "had recently exhibited erratic behavior, was outside of his cell, and refused to return").

Freeman does not further allege that Woolston used more force than necessary to take Freeman to the ground and restrain him. And, although the extent of an inmate's injuries would not by itself conclusively preclude him from prevailing on an excessive force claim, here Freeman's minor injury – a scratch on his knee - supports the conclusion that Woolston used de minimis and appropriate force against Freeman.

For these reasons, the Court ADOPTS the magistrate judge's recommendation as to this claim.  Therefore, the Court DENIES Freeman summary judgment on this claim, and GRANTS Woolston summary judgment.

### IV.  Appointment of counsel

In his objections, Freeman asserts that he has been denied appointed counsel.  Freeman, however, is not entitled to appointed counsel to assist him in pursuing the civil claims he alleges in this action.  See Lanier v. Bryant, 332 F.3d 999, 1002, 1005-06 (6th Cir. 2003) (noting, in case brought in part under Bivens, that "appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances"); see also Steffey v. Orman, 461 F.3d 1218, 1220, 1223-24 (10th Cir. 2006) (addressing 42 U.S.C. § 1983 claim).

Nevertheless, the Court liberally construes Freeman's assertion that he has been denied appointed counsel as the renewal of his request for counsel.  The Court has discretion, under 28 U.S.C. § 1915(e)(1), "to request an attorney to represent" a civil litigant like Freeman who is proceeding in forma pauperis.  See Johnson v. Johnson, 466 F.3d 1213, 1217 (10th Cir. 2006) (per curiam).  In exercising that discretion, the Court "consider[s] a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised by the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."  Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991) (addressing 28 U.S.C. § 1915(d), which was later redesignated § 1915(e)(1)); see also Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004) (applying § 1915(e)(1)).  Considering these factors as they pertain

to this case, the Court conditionally GRANTS Freeman's renewed motion for counsel and, in the interest of judicial efficiency, requests the assistance of the Clerk of the Court to attempt to secure pro bono counsel to represent Freeman.  The condition of this grant is the ability of the Court to secure an attorney who will provide pro bono, uncompensated, representation of Freeman.  Freeman's lack of a right to counsel and the lack of sufficient judicial resources to pay for counsel causes this Court only to undertake an effort to secure pro bono volunteer counsel.  If the Court is not successful in securing pro bono counsel for Freeman, then Freeman's request for counsel will be denied.

### V.  Conclusion

For the foregoing reasons, the Court ORDERS the following:

The parties' objections (Docs. 190, 192) to the magistrate judge's report and recommendation are OVERRULED in part and GRANTED in part; and the magistrate judge's report and recommendation (Doc. 186) is, thus, ADOPTED in part and REJECTED in part.

Freeman's motion for summary judgment (Doc. 151) is DENIED in full.

Defendants' motion for summary judgment (Doc. 129) is GRANTED in part and DENIED in part: Defendants are DENIED summary judgment as to Freeman's first claim, but Defendant Woolston is GRANTED summary judgment on Freeman's second claim.

Freeman's request for the appointment of counsel is GRANTED to the extent that pro bono representation can be found.  Otherwise, his request for appointment of

counsel will be DENIED.  In the interest of judicial efficiency, the Court requests the assistance of the Clerk of the Court in attempting to secure counsel for Freeman.

As a housekeeping matter, the Court grants Freeman's "Motion to Show Cause" (Doc. 195), docketed January 25, 2013, seeking to "show cause why he has no assets and no means by which to make [one of the] monthly payment[s]" owed on the filing fee (Doc. 3 at 2).

Finally, the Court requests that the magistrate judge set a final pretrial conference and conduct such other proceedings and enter such other orders as may be appropriate, consistent with this Order.

Dated this __28th__ day of _____March_____, 2013.

BY THE COURT:

*s/ David M. Ebel*

U. S. CIRCUIT COURT JUDGE